**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 42795**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 67** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed:  October 24, 2016** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **LDONNA MARIE YOUMANS,** | ) | |
| | ) | |
| **Defendant-Appellant,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **TAMERA KELLY, Ada County Chief** | ) | |
| **Deputy Prosecuting Attorney,** | ) | |
| | ) | |
| **Intervenor-Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Thomas F. Neville, District Judge.

Judgment of conviction and sentences for burglary, attempted burglary, and possession of a controlled substance, <u>affirmed</u>; order granting motion to supplement record, <u>vacated</u>.

Eric D. Fredericksen, Interim State Appellate Public Defender; Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

Jan M. Bennetts, Ada County Prosecuting Attorney; James K. Dickinson, Senior Deputy, Boise, for intervenor.

GRATTON, Judge

Ldonna Marie Youmans appeals from her judgment of conviction after a jury found her guilty of burglary, attempted burglary, and misdemeanor possession of a controlled substance. Specifically, Youmans argues:  (1) the district court erred by admitting certain testimony into

1

evidence; (2) there was insufficient evidence to support her conviction of possession of a controlled substance; (3) the district court imposed an excessive sentence; and (4) the district court was without jurisdiction to supplement the record and to make factual findings after Youmans filed a timely notice of appeal. We affirm the judgments of conviction and sentences. We vacate the district court's order granting the motion to supplement the record for lack of subject matter jurisdiction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Over a span of two months, Youmans was captured six separate times on surveillance video wearing nursing scrubs and entering the Garden Plaza of Valley View retirement facility. Youmans had previously been employed as a visiting nurse at the retirement facility. Each time she entered the facility between 11:20 a.m. and 11:30 a.m., when the majority of residents were at lunch. Youmans ultimately entered at least seven apartments and attempted to enter an additional eleven. Following Youmans' entry into their apartments, residents reported missing prescription medications, including hydrocodone. Management at the retirement facility contacted local law enforcement.

After viewing the surveillance footage and interviewing one of the victims, Det. Paporello met with Youmans. Youmans acknowledged that she had been at the facility and claimed she was there to visit former clients. However, she did not know the names of the individuals into whose rooms she had entered. Youmans was subsequently arrested and during her booking at the jail, officers discovered seventeen loose prescription pills at the bottom of her purse. Det. Paporello later identified the prescription pills as hydrocodone.

Following trial, a jury found Youmans guilty of burglary, attempted burglary, and misdemeanor possession of a controlled substance.[1] The district court entered judgment against Youmans and imposed concurrent unified sentences of ten years with three years determinate on the burglary conviction, five years with three years determinate on the attempted burglary conviction, and retained jurisdiction. After the period of retained jurisdiction, the district court suspended Youmans' sentences and placed her on probation for a period of ten years.

---

[1]    The district court also imposed a concurrent 180-day jail sentence on Youmans' conviction for possession of hydrocodone.

2

Youmans timely filed a notice of appeal prior to the expiration of the retained jurisdiction period. In the notice of appeal and amended notice of appeal Youmans identified, as a potential appellate issue, a claim of prosecutorial misconduct for failing to turn over the computer hard drive. At the time of the retained jurisdiction hearing, the State requested the opportunity to clarify the record regarding the claim. Ultimately, the district court determined that it had jurisdiction to supplement the record, allowed the filing of evidence relating to the claim, heard argument and entered factual findings, and concluded that no misconduct occurred. Youmans appeals.

## II.

## ANALYSIS

Youmans claims: (1) the district court erred by admitting the officer's testimony as to the identity of the pills found in her purse; (2) there was insufficient evidence to support her conviction of possession of a controlled substance; (3) the district court imposed an excessive sentence; and (4) the district court was without jurisdiction to supplement the record and to make factual findings after Youmans filed a timely notice of appeal.

### A.      Foundation of Testimony

Youmans argues that Det. Paporello's testimony identifying the pills found in her purse should not have been admitted into evidence because the State did not provide proper foundation. Accordingly, Youmans asserts the convictions for burglary, attempted burglary, and possession of a controlled substance should be vacated. The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

At trial, Det. Paporello testified that he used an online database to identify the pills found in Youmans' purse. He indicated that he entered identifying characteristics of the pills including the numbers, shape, and color into the database, and the database named the type of substance and milligram strength which corresponded with those identifiers.[2] Det. Paporello stated that the use of an Internet search to identify a pill was something he knew based on his training and experience as a law enforcement officer, and that it was common for other officers to use online resources. Det. Paporello acknowledged that he did not recall the name of the website he used to identify the pills and that he is not a narcotics officer.[3] However, Det. Paporello explained that he had discussed this identification method with a narcotics officer and that officers commonly use websites to identify prescription pills in the field. Thereafter, over defense counsel's objections,[4] Det. Paporello testified that the pills found in Youmans' purse were hydrocodone.

Youmans argues that Det. Paporello's testimony lacked foundation because the State did not identify Det. Paporello as a prescription pill expert, nor would he meet the threshold required to testify as an expert witness. Youmans also argues that the State had an obligation to identify the "treatise" upon which Det. Paporello was relying. However, the State asserts that the testimony was properly admitted as lay opinion testimony under Idaho Rule of Evidence 701, which provides:

---

[2]    Under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 321, et. seq., the Secretary of Health and Human Services, through the Federal Drug Administration, is authorized to regulate prescription medications. Under 21 CFR § 206.10, promulgated under this authority,

> [u]nless exempted under 206.7, no drug product in solid oral dosage form may be introduced or delivered for introduction into interstate commerce unless it is clearly marked or imprinted with a code imprint that, in conjunction with the product's size, shape, and color, permits the unique identification of the drug product and the manufacturer or distributor of the product.

[3]    Det. Paporello acknowledged that he had only identified pills on the Internet twice before and that he is primarily assigned to property crimes.

[4]    Responding to defense counsel's objections, the State provided, "my response is that through Detective Paporello the State has laid foundation. The identification of a prescription pill is overly scientific, where an--an expert would be needed to do that. He's looking at information in an online database that's commonly used by law enforcement to identify prescription pills." On appeal, Youmans asserts that the State admitted that an expert is needed to identify controlled substances. However, the context of the statement leads us to believe that either the State misspoke or there is an error in the transcription. It appears that the State was arguing that expert testimony was unnecessary to identify a prescription medication.

4

If the witness is not testifying as an expert, the testimony of the witness in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

We agree that Det. Paporello testified as a lay witness. He described the steps he personally undertook to identify the loose pills found in Youmans' purse, which included utilizing an unnamed online database. Further, Det. Paporello testified that the pills were hydrocodone, the controlled substance with which Youmans was charged with possessing, and that the manner in which he identified the pills was consistent with the practice of other officers. Finally, using such a database does not require scientific, technical, or specialized knowledge. Det. Paporello did not speak to the chemical nature of the controlled substance; rather, only to its classification, which could be determined by comparison of observable characteristics, including shape, color, and numeric identifiers. The probative value of this testimony would have been greater if the database was named and there was consistency in the online sources used by officers in the field to identify prescription pills. Nevertheless, the evidence carries probative value that the online database used was adequate to specifically identify what type of prescription pills were found in Youmans' purse. It is not dissimilar to other types of testimony allowed from lay witnesses. *See State v. Barnes*, 147 Idaho 587, 590-96, 212 P.3d 1017, 1020-26 (Ct. App. 2009) (lay witness testimony identifying a person in a still picture or video using a totality of the circumstances approach is admissible); *State v. Waller*, 140 Idaho 764, 767, 101 P.3d 708, 711 (Ct. App. 2004) (lay witness testimony comparing signatures did not require scientific, technical, or specialized knowledge and is admissible). Youmans assertions speak more to the weight and reliability of the testimony than to the foundation and the jury had the opportunity to determine how much to rely upon Det. Paporello's statements. Therefore, Det. Paporello's testimony was supported by adequate foundation.

## B.     Sufficiency of Evidence

Youmans argues that the State failed to offer sufficient evidence that the pills found in her purse were a controlled substance and adopts her argument, as stated above, that the district court improperly permitted Det. Paporello to testify that the pills were hydrocodone. Youmans further argues that even if Det. Paporello's testimony was properly admitted, the jury could not properly find that the pills were hydrocodone because they were never chemically analyzed by

5

the police. As such, Youmans asserts, the conviction for possession of a controlled substance should be vacated.

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Youmans' appeal presents the question of whether chemical analysis is essential to the prosecution of a drug offense, an issue previously addressed by this Court in *State v. Mitchell*, 130 Idaho 134, 937 P.2d 960 (Ct. App. 1997). In *Mitchell*, the defendant challenged the sufficiency of the trial evidence to support a jury verdict finding him guilty of delivery of a controlled substance. The substance delivered during the transaction in question was not recovered by the police and therefore was not identified by chemical analysis. At trial, a confidential informant testified, based on his experience purchasing and using methamphetamine, including purchases from the defendant, that the packaging and price was consistent with how methamphetamine is commonly sold. This testimony was corroborated by a police officer who listened to the transaction occur over a transmission device. On appeal, the defendant argued that because the delivered substance was not recovered by the police and tested, the jury could not properly find that it was methamphetamine. This Court noted that Mitchell had failed to cite any authority holding that a chemical analysis is necessary for proof of the identity of a controlled substance and, on the other hand, research revealed a great many jurisdictions holding that the identity of a controlled substance may be proved by circumstantial evidence. *Id.* at 136, 937 P.2d at 962. We held that circumstantial evidence may be sufficient to prove the identity of a substance in the absence of laboratory analysis, although chemical

6

analysis is preferred and most reliable. *Id.* Even so, it remains the State's burden to provide evidence that meets the standard of proof beyond a reasonable doubt. *Id.*[5]

Therefore, we review the evidence presented in this case to assess whether it was adequate to allow a reasonable juror to conclude, beyond a reasonable doubt, that the substance found in Youmans' purse was hydrocodone. We conclude that the evidence met this standard. Det. Paporello testified that he used an online application to submit identifying characteristics of the pills including the numbers, shape, and color. Further, that the use of an Internet search to identify a prescription pill was something he knew, based on his training and experience as a law enforcement officer, was common for other officers to use online resources to identify prescription pills in the field, and that he had discussed this identification method with an experienced narcotics officer. Finally, Det. Paporello testified that the pills found in Youmans' purse were hydrocodone.

It was up to the jury to weigh the reliability of Det. Paporello's testimony. The entirety of the evidence is sufficient to support the jury's conclusion that the pills found in Youmans' purse were hydrocodone.[6]

---

[5] A number of jurisdictions have held that in the absence of a chemical analysis, other direct and circumstantial evidence can establish beyond a reasonable doubt the identity of drugs. That evidence can include the testimony of a witness who has experience based on familiarity with the drugs through law enforcement, prior use, or training. *United States v. Durham*, 464 F.3d 976, (9th Cir. 2006); *United States v. Schrock*, 855 F.2d 327, 334 (6th Cir. 1988); *United States v. Murray*, 753 F.2d 612, 615 (7th Cir. 1985); *United States v. Scott*, 725 F.2d 43, 45 (4th Cir. 1984); *United States v. Agueci*, 310 F.2d 817, 828 (2d Cir. 1962); *People v. Sonleitner*, 183 Cal. App. 3d (Cal. Ct. App. 1986); *State v. Hernandez*, 935 P.2d 623, 625 (Wash. Ct. App. 1997).

[6] In some jurisdictions, a law enforcement officer's opinion as to the identity of a drug requires that he or she be qualified to testify as an expert, where the officer's familiarity with drugs has come from training and specialized experience in apprehending criminals involved in drugs. *Norman v. State*, 968 A.2d 27 (Del. 2009). Further, some jurisdictions require a scientifically valid chemical analysis, to be testified to via an expert witness, to identify a controlled substance. *State v. Jones*, 718 S.E.2d 415 (N.C. Ct. App. 2011). Finally, some jurisdictions have held that visual identification of prescription drugs is not a sufficiently reliable method of proof in a criminal trial. *People v. Hard*, 342 P.3d 572 (Colo. App. 2014); *People v. Mocaby*, 882 N.E.2d 1162, 1166-68 (Ill. App. Ct. 2008); *State v. Ward*, 694 S.E.2d 738, 740, 743-47 (N.C. 2010).

7

**C.    Excessive Sentence**

The district court handed down concurrent unified sentences of ten years with three years determinate on the burglary conviction, five years with three years determinate on the attempted burglary conviction, and retained jurisdiction. Youmans argues the district court abused its discretion by failing to withhold judgment in both of the felony cases. In the alternative, she contends that the sentences are excessive given any reasonable view of the facts because the district court did not give adequate consideration to relevant mitigating factors. These factors include no previous felony convictions, her understanding of her addiction, and having a support system in place to help meet her sobriety goals.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable and thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Applying these standards and having reviewed the record in this case, we cannot say that the district court abused its discretion. The district court emphasized its concern with Youmans' criminal history, including a misdemeanor DUI conviction and a drug paraphernalia conviction for which she received a withheld judgment. The district court also expressed concern that in the current case, Youmans preyed upon the elderly and vulnerable in planned-out actions that occurred multiple times. In expressly rejecting the notion of a withheld judgment, the district court stated that it had "no confidence at all" that Youmans would be successful because she was

8

unwilling to accept responsibility for her actions and fully admit to her drug problem. The court's sentence clearly demonstrates its focus on the primary objective of protecting society and is not an abuse of discretion. Accordingly, her sentence is affirmed.

**D.      Jurisdiction**

Youmans argues that the district court lacked jurisdiction to allow supplementation of the record once a notice of appeal from a judgment of conviction was timely filed. Accordingly, Youmans asserts that all legal filings, evidence offered, and findings made by the district court subsequent to the date the notice of appeal was filed, should be stricken from the record.

Prior to trial, defense counsel filed a motion to compel a computer hard drive which contained the security surveillance video showing Youmans entering the assisted living complex. The video could be viewed, but the system software was specifically designed to prohibit copying. The manager of the assisted living complex used his cell phone to make video recordings from the surveillance system's computer screen to show Youmans' actions to law enforcement. These cell phone video recordings were shared with Youmans and admitted as evidence at trial. Youmans requested a copy of the entire surveillance video and was told that the software prevented copying. In an attempt to accommodate Youmans' request, the State arranged for the defense team to inspect the computer tower and surveillance system and try to copy the hard drive at the law enforcement building where it was being held as evidence. The defense team examined the surveillance system and unsuccessfully attempted to copy the hard drive. The State also enlisted the help of an Ada County Information Technology employee to attempt to copy the hard drive; the employee was also unable to copy the hard drive. At further insistence by Youmans, the computer hard drive was then transported to the Ada County Courthouse where it was made available to an independent expert, hired by Youmans, who was also unable to make a copy. Thereafter, Youmans indicated at a hearing that she was withdrawing the motion to compel and the district court was never fully apprised of the efforts undertaken to make a copy of the hard drive.

The notice of appeal subsequently filed by Youmans identified the following as a potential issue: "Did the State withhold the computer hard drive evidence and not allow defense counsel full access to it after multiple attempts?" Thereafter at the rider reviewing hearing, the State requested another hearing to supplement the record to include its efforts to make the hard drive available and contest the potential issue raised in the notice of appeal. The State then filed

9

a memorandum in response to discovery allegations, attaching three affidavits in support. Youmans' appellate counsel filed an objection to the State's memorandum, arguing that the district court did not have jurisdiction to enter an order determining whether a discovery violation occurred and that because Youmans had not yet filed an appellant's brief, no issue had actually been raised.

After holding two hearings and receiving briefing from the parties, the district court entered an order finding that because the State made an oral motion to supplement the record prior to Youmans being placed on probation, and it was made during the time period in which the district court retained jurisdiction, it had jurisdiction to consider the motion. The district court entered a second order granting the motion to supplement the record, finding that the State had made the computer and hard drive available to the defense team and that despite all efforts, the hard drive was uncopyable. The district court concluded that it had jurisdiction to make a determination about the discovery allegations, that the hard drive video recording was inculpatory, not exculpatory, that there was no good-faith basis for the allegations and that the evidence had not been withheld, and that there was no prosecutorial misconduct.

On appeal, Youmans does not raise the evidence withholding issue but does assert that the district court lacked jurisdiction to make any factual findings related to the prosecutorial misconduct alleged in the notice of appeal. Youmans argues that the district court erroneously allowed the State to supplement the record and court rulings in order to address what it believed would be an issue raised on appeal. The State argues that the issue is moot because Youmans has not pursued on appeal the claim that the prosecutor withheld evidence and requests that the Court not address this issue. Further, the State agrees that the district court was without jurisdiction to consider the additional evidence but contends that where evidence directly refuting allegations raised for the first time in a notice of appeal is readily available, the otherwise aggrieved party should be allowed to make its case before the district court and create a full factual record for the benefit of both the parties on appeal. Ada County, filing as an intervenor on this issue alone, also argues that the issue is moot but contends that the district court did have jurisdiction to accept evidence and make a determination about the discovery practice that occurred before it.

This Court may dismiss an issue on appeal when it appears that the issue involves only a moot question. A question is moot if it presents no justiciable controversy and a judicial

10

determination will have no practical effect upon the outcome. *State v. Manzanares*, 152 Idaho 410, 419, 272 P.3d 382, 391 (2012); *State v. Long*, 153 Idaho 168, 170, 280 P.3d 195, 197 (Ct. App. 2012). Even where a question is moot, there are three exceptions to the mootness doctrine: (1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and this is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest. *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010).

While the question of whether the prosecutor engaged in misconduct is not directly raised as an issue on appeal, several considerations led to our determination of the issue regarding the district court's jurisdiction. First, this is the only direct appeal opportunity for Youmans to challenge proceedings in the district court purportedly in excess of its jurisdiction. Second, if Youmans failed to raise her jurisdictional claim on direct appeal, it may be deemed to have been waived for purposes of post-conviction relief. *See Hughes v. State*, 148 Idaho 448, 462, 224 P.3d 515, 529 (Ct. App. 2009). Finally, if Youmans attempts to raise a claim that her trial attorney rendered ineffective assistance of counsel for failing to properly allege and litigate a prosecutorial misconduct claim, Youmans will potentially be foreclosed because the district court will have already made factual findings based upon evidence offered by the State. If the evidence offered and findings of fact entered regarding the claim of prosecutorial misconduct for allegedly withholding evidence are allowed to remain in the record, without a determination of the jurisdictional issue, Youmans may suffer collateral legal consequences with no available relief.

Whether a court lacks jurisdiction is a question of law, over which this Court exercises free review. *State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004). When a notice of appeal is filed, the proceedings before the trial court are stayed, as provided for in Idaho Appellate Rule 13(c). *State v. Schwarz*, 133 Idaho 463, 466, 988 P.2d 689, 692 (1999); *State v. Wilson*, 136 Idaho 771, 772, 40 P.3d 129, 130 (Ct. App. 2001). The trial court is permitted to take certain actions during the pendency of an appeal, as enumerated in I.A.R. 13(c). *Wilson*, 136 Idaho at 772, 40 P.3d at 130 ("Idaho Appellate Rule 13(c) enumerates the types of actions that may be taken by a trial court during the pendency of a criminal appeal."); *State v. Wade*, 125 Idaho 522, 524, 873 P.2d 167, 169 (Ct. App. 1994) (following the filing of an appeal in a criminal action, "[t]he district court then lacks authority to enter orders in the case, except as to

11

certain matters enumerated in Rule 13(c)"). The only enumerated power potentially relevant to the order to grant the motion to supplement the record is Rule 13(c)(10), a catch-all provision that authorizes the trial court to "[e]nter any other order after judgment affecting the substantial rights of the defendant as authorized by law." We are aware of no law expressly authorizing the district court to take evidence and issue findings on an issue, as here, not otherwise before the court prior to the filing of the notice of appeal. In *Wade*, this Court examined the catch-all provision and interpreted the rule to prohibit trial courts from reconsidering or making post hoc rationalizations of previous rulings:

> It appears that subsection 10 was intended by the drafters to be a catch-all exception for those orders that are necessarily part of the criminal process and ought not be delayed until the conclusion of an appeal. A trial court may not reconsider or make post hoc rationalizations of previous rulings once a notice of appeal is filed.

*Wade*, 125 Idaho at 524, 873 P.3d at 169. We continued by citing several civil cases that held that a court could not reconsider a prior ruling once a notice of appeal was filed. *Id.* But we noted that the broad language of the catch-all provision "was intended to give the district court jurisdiction to rule upon a motion that has been inadvertently overlooked or that was pending, but not yet decided, when the notice of appeal was filed." *Id.*; *see also Wilson*, 136 Idaho at 773, 40 P.3d at 131 (explaining that the preceding statement in Wade "was merely an expression of our holding that I.A.R. 13(c)(10) applied to the type of order that was then before the court; it was not an expression of the limits of subsection (10)"). Thus, we held that, "after an appeal is filed, a district court in a criminal proceeding may enter an order on a motion filed prior to the appeal where such ruling merely completes the record and does not in any way alter an order or judgment from which the appeal has been taken." *Wade*, 125 Idaho at 524, 873 P.3d at 169.

Here, there was no motion pending at the time the notice of appeal was filed, a fact that is not contested. The assertion that the motion to supplement the record was made prior to the district court placing Youmans on probation is not germane.[7] The State filed its motion after the

---

[7]   The district court appears to have concluded that because it had ordered a period of retained jurisdiction, Idaho Code § 19-2601 provided the court with jurisdiction to accept additional evidence and enter an order on the misconduct claim, even though a notice of appeal had been filed. We disagree. While Idaho Appellate Rule 13(c)(4) allows the district court to enter orders as permitted under I.C. § 19-2601, such orders are limited to the purpose of retained jurisdiction. The district court is not granted wholesale authority thereunder to enter any orders it deems appropriate as to any issues involving the criminal matter.

12

case was fully adjudicated. We understand how an accusation of misconduct could trigger a legitimate desire to respond and set the record straight. However, the deadline had passed to add into the record the great lengths taken by the prosecutor's office in response to Youmans' motion to compel. An appeal was already pending at the time these steps were taken. Accordingly, the district court lacked the authority to entertain the motion and enter an order to supplement the record and to make findings with respect to whether prosecutorial misconduct occurred. In summary, all legal filings, evidence offered, and findings made by the district court in regard to the prosecutorial misconduct allegation, subsequent to the date the notice of appeal was filed, shall be stricken from the record.

## III.

## CONCLUSION

The district court did not abuse its discretion in allowing Det. Paporello's testimony. Further, the entirety of the evidence is sufficient to support the jury's conclusion that the pills found in Youmans' purse were hydrocodone. The district court did not abuse its discretion in sentencing Youmans. Accordingly, Youmans' judgment of conviction and sentences are affirmed. Further, the district court lacked jurisdiction to act once a notice of appeal had been timely filed. Accordingly, we vacate the district court's order to supplement the record and strike from the record all legal filings, evidence offered, and findings made by the district court, in regard to the prosecutorial misconduct allegation, after the notice of appeal was filed.

Chief Judge MELANSON and Judge HUSKEY **CONCUR**.