IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 42517

| | |
|---|---|
| CITY OF SANDPOINT, | ) |
| | ) Boise, June 2016 Term |
| Plaintiff-Respondent, | ) |
| | ) 2016 Opinion No. 107 |
| v. | ) |
| | ) Filed: November 1, 2016 |
| INDEPENDENT HIGHWAY DISTRICT, | ) |
| | ) Stephen W. Kenyon, Clerk |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Hon. John T. Mitchell, District Judge.

The judgment of the district court is <u>reversed</u> and the case is <u>remanded</u>.

Sherer & Wynkoop, LP, Meridian and James, Vernon & Weeks, PA, Coeur d'Alene, for appellant. Susan P. Weeks and David E. Wynkoop argued.

Scot R. Campbell, Sandpoint City Attorney, Sandpoint, and Winston & Cashatt, Lawyers, Spokane, for respondent. C. Matthew Andersen argued.

---

J. JONES, Chief Justice

This appeal concerns the legality of a Joint Powers Agreement ("JPA") entered into in 2003 between the Independent Highway District ("IHD") and the City of Sandpoint ("City") in settlement of litigation. The JPA provides for the City to assume control of all streets in the City and for IHD to pay over to the City all highway ad valorem taxes collected on property in the city limits. After the parties had operated under the JPA for ten years, IHD notified the City that, upon reflection, it had determined the JPA was legally void and that it would no longer pay its share of the property taxes to the City. The City filed suit against IHD for breach of contract and sought both a declaratory ruling that the JPA was valid and an order enjoining IHD from interfering with the City's control of the streets within city limits. The district court ruled in favor of the City on summary judgment and granted attorney fees. IHD filed a timely appeal to this Court.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

IHD is a political subdivision located in Bonner County. By statutory directive, it has the duty to maintain and improve the highways within its jurisdiction, which includes the City, and to levy and collect ad valorem property taxes for highway construction and maintenance. I.C. §§ 40-201, 40-801. The City is a municipal corporation and it, too, has the statutory duty to improve and maintain highways within city limits. I.C. § 40-201. To carry out that duty, the City is entitled to half of the tax revenues collected by IHD on real property located within the City. I.C. § 40-801(1)(a).

In early 2003, the City and IHD were engaged in litigation wherein the City sought to dissolve IHD and assume its responsibilities within the city limits.[1] In order to avoid dissolution, IHD entered into a Stipulation for Settlement ("Stipulation"), which required the two parties to enter into a joint powers agreement to resolve the issues in dispute. The JPA, which was signed July 8, 2003, provides, in pertinent part:

| | |
|---|---|
| PURPOSE: | The purpose of this agreement is to divide the jurisdiction, maintenance and control of streets and public rights of way within the boundaries of the district between the District and the City and provide for sharing of ad valorem tax revenue. |
| JURISDICTION, MAINTENANCE AND CONTROL: | The City shall exercise exclusive general supervisory authority over all streets and public rights of way within the city limits of the City of Sandpoint including any property subsequently annexed. |
| | The District shall exercise exclusive general supervisory authority over all streets and public rights of way within the boundaries of the District lying outside of the city limits of the City of Sandpoint. |

* * *

| | |
|---|---|
| REVENUE DISTRIBUTION: | The District at the present time and in the future will levy and apply for ad valorem property taxes under the authority granted in Chapter 13, Title 40, Idaho Code. The District |

---

[1] Litigation between the City and IHD over control of streets within the Sandpoint city limits began in the 1990s and has resulted in three decisions by this Court. The first, *City of Sandpoint v. Sandpoint Ind. Hwy*., 126 Idaho 145, 150–51, 879 P.2d 1078, 1083–84 (1994) (*Sandpoint I*), resulted in a holding by this Court that IHD "has exclusive general supervisory authority to maintain the streets within [IHD] absent a showing by the City that it has a functioning street department." The second, *Sandpoint Ind. Hwy. Dist. v. Bd. of Cnty. Comm'rs*, 138 Idaho 887, 71 P.3d 1034 (2003) (*Sandpoint II*) has no bearing on this appeal. The third, *City of Sandpoint v. Sandpoint Ind. Hwy. Dist.*, 139 Idaho 65, 70, 72 P.3d 905, 910 (2003) (*Sandpoint III*) resulted in a holding by this Court that "the City cannot obtain jurisdiction over streets that are within the boundaries of [IHD] unless [IHD's] jurisdiction over those streets is first lawfully terminated under the appropriate statutory provisions."

> will pay over to the city all property tax funds from such
> District levies on all property located within the city limits.

For ten years following entry into the JPA, IHD transferred to the City all tax payments it received on property within the city limits. However, by early 2013, the IHD Board of Commissioners no longer contained any of the board members who had signed the JPA. The new IHD board felt that there was little benefit in continuing with the JPA. Accordingly, on July 25, 2013, IHD unilaterally "elected" to terminate the JPA. From that point forward, IHD refused to transfer its statutory share of property tax revenues to the City.

The City filed a complaint against IHD in August 2013, claiming breach of contract and seeking: (1) a declaration upholding the Stipulation for Settlement; (2) a declaratory judgment that the JPA is a legal and valid exercise of government authority; (3) an order enjoining IHD from interfering with the City's operation and maintenance of its streets; (4) an order requiring IHD to immediately transfer all ad valorem taxes collected and currently being withheld; (5) a restraining order requiring IHD to comply with the JPA while the matter was under consideration; and (6) costs and attorney's fees.

IHD responded to the complaint, alleging: (1) the JPA was violative of article VIII, section 3 of the Idaho Constitution because IHD's commitment to turn over its half of the property taxes collected within the city limits constituted a long-term indebtedness or liability exceeding yearly revenues that had to be, but was not, approved by the vote of two-thirds of the qualified electors; (2) the JPA did not include provisions mandatory for a joint powers agreement under Idaho Code section 67-2328; (3) the JPA was violative of Idaho Code section 40-801, which requires an equal division of ad valorem property taxes between the City and IHD; (4) the JPA purports to have a perpetual duration in violation of public policy; and (5) the JPA is void for lack of consideration.

On July 31, 2014, the district court upheld the validity of the JPA on summary judgment. The district court held, in essence, that the JPA was not violative of the Idaho Constitution, that the JPA was supported by adequate consideration and contained all of the elements of a valid joint powers agreement, and that IHD had breached the JPA by withholding its half of the ad valorem property taxes collected within the city limits. IHD timely appealed.

## II. STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion.

> Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party.

*Golub v. Kirk-Hughes Dev., LLC*, 158 Idaho 73, 75–76, 343 P.3d 1080, 1082–83 (2015) (quoting *Conner v. Hodges*, 157 Idaho 19, 23, 333 P.3d 130, 134 (2014)).

## III. ANALYSIS

On appeal, IHD primarily focuses on the contention that the JPA violates article VIII, section 3 of the Idaho Constitution by creating a long-term indebtedness or liability on IHD's part that exceeds yearly revenues, i.e., the purported perpetual obligation to transfer all ad valorem property taxes assessed and collected within city limits to the City. Indeed, both parties devote a good deal of their argumentation to the issue of tax revenues and how they are to be distributed under the JPA. We decline to address the constitutional issue because this case can be determined on a non-constitutional ground. "It is well established that when a case can be decided upon a ground other than a constitutional ground, the Court will not address the constitutional issue unless it is necessary for a determination of the case." *Mullinix v. Killgore's Salmon River Fruit Co.*, 158 Idaho 269, 279, 346 P.3d 286, 296 (2015). The pertinent issue before the Court, and the issue determinative of this appeal, is the validity of the wholesale transfer or delegation by IHD to the City of its duty to maintain and improve roads and streets within the city limits.

IHD does devote some argument to the claim that the JPA is violative of Idaho Code section 67-2328, which authorizes public agencies to enter into agreements to jointly exercise their lawfully authorized powers. IHD contends that the JPA violates requirements of subsections (c) and (d) of that statute by failing to specify its duration, by failing to include a provision for administering the joint or cooperative undertaking, and by divesting IHD of the statutory responsibility imposed by law to maintain and improve the streets of the City, which are within its jurisdiction. However, even if the issue of illegality was not squarely raised, the Court is duty bound to consider and decide the issue. *Trees v. Kersey*, 138 Idaho 3, 6, 56 P.3d 765, 768 (2002).

4

Section 67-2328 sets out the requirements for valid joint powers agreements. Provisions pertinent to the Court's analysis are:

(c)     Any such agreement shall specify the following:

* * *

(2)     The precise organization, composition and nature of any separate legal or administrative entity created thereby together with the powers delegated thereto, provided such entity may be legally created.

* * *

(d)     In the event that the agreement does not establish a separate legal entity to conduct the joint or cooperative undertaking, the agreement shall . . . contain the following:

(1)     Provision for an administrator or a joint board responsible for administering the joint or cooperative undertaking. In the case of a joint board, public agencies party to the agreement shall be represented.

* * *

(3)     No agreement made pursuant to this act shall relieve any public agency of any obligation or responsibility imposed upon it by law except that to the extent of actual and timely performance thereof by a joint board or other legal or administrative entity created by an agreement made hereunder, said performances may be offered in satisfaction of the obligation or responsibility.

I.C. § 67-2328(c), (d).

The JPA does not establish an entity designed to conduct the joint or cooperative undertaking between IHD and the City. There is no provision for an administrator or a joint board responsible for administering the joint or cooperative undertaking. The exception in subsection (d)(3) does not, therefore, apply. That subsection unequivocally states that "[n]o agreement made pursuant to this act shall relieve any public agency of any obligation or responsibility imposed upon it by law."

That appears to be the exact purpose of the JPA, i.e., to divest IHD of its duty to maintain and improve the streets within city limits and to further divest it of the property tax revenues to perform that duty. The JPA clearly states that its purpose is "to divide the jurisdiction, maintenance and control of streets and public rights of way within the boundaries of the district between [IHD] and the City." To carry out such purpose, the JPA provides that the "city shall

5

exercise exclusive general supervisory authority over all streets and public rights of way within the city limits."

Idaho law is clear that both highway districts and cities must improve and maintain highways within their respective jurisdictions. Idaho Code section 40-201 states:

> There shall be a system of state highways in the state, a system of county highways in each county, a system of highways in each highway district, and a system of highways in each city, except as otherwise provided. The improvement of highways and highway systems is hereby declared to be the established and permanent policy of the state of Idaho, and the duty is hereby imposed upon the state, and all counties, cities, and highway districts in the state, to improve and maintain the highways within their respective jurisdiction as hereinafter defined, within the limits of the funds available.

The City of Sandpoint is located within the district boundaries of IHD. Therefore, both IHD and the City have the duty to maintain and improve the streets within the city limits. The JPA purports to divest IHD of the duty to improve and maintain the city street system or even to supervise that endeavor, while transferring full authority to the City to exercise full control over the City streets. This is a violation of the statutory scheme under Title 40 of the Idaho Code, particularly Idaho Code section 40-201.

Where the Legislature establishes a statutory scheme that includes assignment of duties to various governmental entities, those entities may not disregard their assigned duties. In *Roberts v. Transp. Dep't*, 121 Idaho 727, 731–32, 827 P.2d 1178, 1182–83 (Ct. App. 1991), the Court of Appeals correctly observed that where

> the legislature enacts a statute requiring that an administrative agency carry out specific functions . . . that agency cannot validly subvert the legislation by promulgating contradictory rules. An administrative agency is limited to the power and authority granted it by the legislature. Such delegated authority is primary and exclusive in the absence of a clearly manifested expression to the contrary. An agency must exercise any authority granted by statute within the framework of that statutory grant. It may not exercise its sub-legislative powers to modify, alter, enlarge or diminish the provisions of the legislative act which is being administered.

(internal citations omitted). The same rules apply with regard to governmental subdivisions such as IHD and the City.

This Court has previously provided guidance to these parties regarding the manner in which the City may acquire full control over the maintenance and improvement of its streets. As noted above, in *Sandpoint I*, we held that IHD "has exclusive general supervisory authority to

6

maintain the streets within [IHD] absent a showing by the city that it has a functioning street department." 126 Idaho at 150–51, 879 P.2d at 1083–84. The City thereafter established a functioning street department and then pursued litigation against IHD, contending that it had met the requirements set out by the Court. However, in *Sandpoint III*, after going through a very detailed analysis of the Legislature's statutory scheme for maintaining, improving, and financing city streets, the Court said:

> Considering the above-cited statutes, the legislature was very specific in outlining the procedures to alter highway districts by detaching territory, by dissolution, by consolidation, by annexation, by adoption of a single county-wide district, and by reorganization of county highway administration. There is no indication that the legislature intended that a city included within an existing highway district could exclude its streets from the highway district simply by creating a city street department capable of assuming the maintenance, construction, repairs, snow removal, sanding and traffic control of the city streets. . . . Rather, it appears that the legislature's intent was to prevent cities with functioning street departments from being included within a highway district, with the exception of a single county-wide highway district created under Chapter 14, Title 40, Idaho Code. . . . Thus, we hold that the City cannot obtain jurisdiction over city streets that are within the boundaries of the Highway District unless the Highway District's jurisdiction over those streets is first lawfully terminated under the appropriate statutory provisions.

139 Idaho at 70, 72 P.3d at 910.

Following the Court's decision in *Sandpoint III*, the City did initiate and pursue an effort to dissolve IHD and assume its function within the city limits. However, the parties overlooked the Court's holding in entering into a settlement that sought to divest IHD of its statutory duty within the City and hand over to the City its one-half share of property taxes to which it was entitled under Idaho Code section 40-801. Both the Stipulation and the JPA are contrary to law. Furthermore, such an agreement is violative of Idaho Code section 67-2328(d)(3).

While the Legislature has not authorized a governmental entity having the duty to maintain and improve highways to farm out its responsibilities, it has provided substantial authority for intergovernmental cooperation in the highway arena. For instance, Idaho Code section 40-607 allows counties and highway districts to enter into mutual maintenance agreements. Idaho Code section 40-1333 authorizes cities to make agreements with counties, highway districts, or the State to perform all or part of city highway work. Idaho Code section 40-604 authorizes counties to make agreements with cities, highway districts, the State and the United States to perform the highway maintenance work of those entities. Idaho Code section

7

67-2332 allows public agencies to contract with other public agencies to perform any governmental service that the contracting parties are authorized by law to perform. Indeed, Idaho Code section 67-2328 allows governmental entities with joint responsibilities to enter into joint powers agreements, provided that they comply with the specific requirements of Idaho law. In this case, the Legislature has placed statutory responsibility on both cities and highway districts that encompass cities to perform maintenance and improvement activities on city street systems. Those entities are authorized to enter into a joint powers agreement to share the duties and to share the cost of carrying out those duties. However, what they cannot do is agree that the highway district will completely turn over its statutory duty to a city, along with its share of ad valorem property tax revenues.

Because the JPA violates the Legislature's statutory requirements under both Title 40 and Idaho Code section 67-2328, the JPA is void and unenforceable. As a result of holding that the JPA is statutorily impermissible, we need not address the additional claims raised by IHD on appeal.[2] Since we reverse the judgment, IHD is relieved of the requirement to remit its share of the withheld property tax revenues to the City. Indeed, neither party may continue to enforce any provision of the JPA against the other. "When a court invokes the illegality doctrine, it denies enforcement of the contract, leaving the parties where it finds them." *Trees*, 138 Idaho at 9, 56 P.3d at 771. Of course, it is the responsibility of IHD to resume the performance and funding of highway maintenance on streets located within the limits of the City. We remand the case to the district court in the event court assistance is necessary to unwind the relationship between the parties.

## IV. ATTORNEY FEES AND COSTS

Both parties have requested attorney fees on appeal. Because the Court has held the agreement entered into voluntarily by both parties to be invalid, we decline to award attorney fees or costs to either party.

## V. CONCLUSION

---

[2] The City argued on appeal that IHD was judicially estopped from arguing the illegality of the JPA. The City asserts that by negotiating, entering into, and performing the JPA for almost a decade, IHD admitted the legality of the agreement and was estopped from claiming otherwise. However, this Court long ago held "that there can be no estoppel if the contract was expressly prohibited by the constitution or statute, or if it was entirely beyond the power of the municipality." *Deer Creek Hwy. Dist. v. Doumecq Hwy. Dist.*, 37 Idaho 601, 609, 218 P. 371, 373 (1923). We continued, "[n]o sound reason occurs to us why a highway district should not be chargeable with knowledge of the limitations of the lawful powers of other highway districts with which it seeks to contract. Municipal corporations must be required to take account of and obey the law whose creatures they are." *Id.* at 610, 218 P. at 373.

We reverse the judgment of the district court and remand the case to the district court. No costs or attorney fees to either party.

Justices EISMANN, BURDICK, W. JONES and HORTON CONCUR.