# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44489

STATE OF IDAHO,                          )
                                         )        Boise, January 2018 Term
    Plaintiff-Respondent,            )
                                         )        2018 Opinion No. 16
v.                                       )
                                         )        Filed: March 2, 2018
GRACIE JEAN TRYON,                       )
                                         )        Karel A. Lehrman, Clerk
    Defendant-Appellant.             )
                                         )
                                         )

Appeal from the District Court of the Third Judicial District of the State of Idaho, in and for Canyon County. Hon. James C. Morfitt, District Judge.

The district court's judgment of conviction is <u>vacated</u>.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for Appellant. Ben P. McGreevy argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for Respondent. John C. McKinney argued.

_____

BEVAN, Justice

Gracie Jean Tryon ("Tryon") appeals her conviction for possession of a controlled substance. Tryon contends that the district court erred when it admitted certain statements regarding the identity of the alleged controlled substance. Tryon claims the admission of these statements violated her constitutional right to confront witnesses against her because the declarant was unavailable and she did not have a prior opportunity to cross-examine him. Tryon also asserts that the State did not present sufficient evidence to support a conviction for possession of a controlled substance.

1

## II. FACTS AND PROCEDURE

At approximately 10:00 p.m. on February 1, 2016, a narcotics detective was patrolling the neighborhood of North Indiana in Caldwell, Idaho. The detective was watching a house he had visited three or four times before to assist in misdemeanor probation visits. The detective also testified that he had previously found drugs and drug paraphernalia at the same house.

While in the neighborhood, the detective saw a Ford truck that was parked on the street near the house drive away. He testified that he followed the truck, observed that the truck failed to make a complete stop at two stop signs, and then pulled the truck over. The driver was identified as Carl Ringcamp and the passenger, Tryon, told the detective she and Ringcamp were boyfriend and girlfriend.

When the detective approached the driver's side of the vehicle, he testified that he noticed the faint smell of marijuana. Based on the odor, he asked Ringcamp to exit the vehicle and follow him to the back of the truck. After a short conversation, Ringcamp was taken into custody and placed in the back of the patrol car. Another officer arrived, and when Tryon exited the truck from the passenger side, the detective testified he overheard Tryon say she was not going to allow them to search her purse. The detective asked her about the marijuana odor and about a marijuana pipe that Ringcamp claimed to have left on the seat. Tryon admitted it was a "weed pipe" and that she had it in her pocket. The detective searched Tryon and found a cylinder pipe or e-cigarette.

When the detective searched the truck, he found the following: (1) a small purse with stems and bits of black residue located in the passenger side door panel; (2) a large purse on the passenger side floorboard that was open and packed full of items; (3) a black case that sat on top of everything in the large open purse; (4) two hypodermic syringes and two glass pipes in a purple Crown Royal bag that was inside the black case, with one of the pipes having a white residue in its burnt bottom; and (5) a small blue plastic case next to the Crown Royal bag that held a baggie with a white crystallized substance.

The State charged Tryon with one count of possession of a controlled substance, under Idaho Code section 37-2731(c)(1), and one count of possession of drug paraphernalia, under Idaho Code section 37-2734A. Tryon pled not guilty and proceeded to a trial by jury.

At trial, the detective testified that seventy to eighty percent of the time when he finds methamphetamine during an investigation, he also finds syringes or pipes. Here, the syringes,

pipes, and the white crystalline substance were "right next to each other." During direct examination the detective was asked whether or not the white crystalline substance he found looked like methamphetamine; he answered "Yes."

The State did not present laboratory tests that identified the white crystalline substance as methamphetamine. Additionally, the State could not locate Ringcamp at the time of Tryon's trial and, therefore, he was unavailable to testify. Nevertheless, over an objection by Tryon's counsel on the basis of her right to confrontation, and after an offer of proof by the State outside of the jury's presence, the district court determined the statements made by Ringcamp while he was in custody were nontestimonial and permitted the detective to testify about those statements. The State argued the detective's testimony offered proof the substance was methamphetamine. The detective testified:

> While he was in the back of my car, I asked him whose meth it was and he stated it wasn't hers . . . He gave me a couple other responses as well . . . He said again it wasn't hers. And then, he later said, "It was mine. Okay."

On cross-examination, the detective testified that he did not submit the glass pipes, syringes, or baggies for DNA testing or fingerprinting. The detective also did not get a blood or urine sample from Tryon to test whether or not she had methamphetamine in her system. Instead, the State relied solely on circumstantial evidence to prove that the substance was methamphetamine. In fact, the State's case-in-chief relied, in part, on the testimony of the detective, who testified he had dealt with methamphetamine on a weekly basis in approximately 100 cases during his three years with the Caldwell Police Department's "Street Crimes Unit." Through his training and experience, the detective further testified that he knew: 1) how to identify methamphetamine (a white crystallized substance, small crystals, and some powder); 2) methamphetamine had little to no odor; 3) how it was packaged (in large sandwich baggies, smaller zip-lock baggies, and "tear offs" of plastic shopping bags that are melted at the end); 4) how it is typically used (smoked by using glass tubes with a ball on one end, injected, or snorted); and 5) that used methamphetamine pipes have a white residue inside and could also be black on the bottom of the ball.

After evidence was presented, including the detective's testimony, a jury found Tryon guilty of both charges. The district court imposed a unified four-year sentence with one and one-

half years fixed, suspended the sentence, and placed Tryon on probation for three years. Tryon timely filed this notice of appeal.

## II. STANDARD OF REVIEW

"This Court will uphold a judgment of conviction entered upon a jury verdict so long as there is substantial evidence upon which a rational trier of fact could conclude that the prosecution proved all essential elements of the crime beyond a reasonable doubt." *State v. Kralovec*, 161 Idaho 569, 572, 388 P.3d 583, 586 (2017) (internal quotations and citation omitted). "On appeal, where a defendant stands convicted, the evidence is viewed in the light most favorable to the prosecution." *State v. Allen*, 129 Idaho 556, 558, 929 P.2d 118, 120 (1996) (internal quotations and citation omitted). Moreover, this Court "is precluded from substituting its judgment for that of the jury as to the credibility of witnesses, the weight of the evidence and the reasonable inferences to be drawn from the evidence." *Id.*

## III. ANALYSIS

**A. The evidence in the record does not establish beyond a reasonable doubt that Tryon was in possession of a controlled substance.**

The State contends that the evidence in the record establishes beyond a reasonable doubt that that the substance at issue—the white crystalline substance found in the Crown Royal bag in Tryon's purse—was methamphetamine. This argument fails because one of the essential elements the State had to prove beyond a reasonable doubt was the identity of the substance. I.C. § 37-2732(c)(1).

1. There is insufficient evidence to prove the essential elements of possession of a controlled substance.

The Fourteenth Amendment of the United States Constitution guarantees the right to due process, and the United States Supreme Court has held that as a part of that due process, "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *State v. Taylor*, 157 Idaho 186, 190, 335 P.3d 31, 35 (2014) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The relevant inquiry is not whether this Court would find the defendant to be guilty beyond a reasonable doubt, but whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v.*

4

*Adamcik*, 152 Idaho 445, 460, 272 P.3d 417, 432 (2012) (internal quotations and citation omitted). This analysis requires this Court to consider the evidence "in the light most favorable to the State" and not to "substitute [its] judgment for that of the jury on issues of witness credibility, weight of the evidence, or reasonable inferences to be drawn from the evidence." *Id.* (citation omitted). Indeed, "[i]t is within the province of the jury to assign weight to conflicting evidence and credibility to testimony." *State v. Anderson*, 145 Idaho 99, 104, 175 P.3d 788, 793 (2008). "Where there is competent evidence to sustain the verdict, this court will not reweigh that evidence." *State v. Filson*, 101 Idaho 381, 386, 613 P.2d 938, 943 (citation omitted). Furthermore, "[t]his Court will not disregard a jury's verdict unless the evidence is insufficient for any rational jury to find the defendant guilty beyond a reasonable doubt." *Anderson*, 145 Idaho at 104, 175 P.3d at 794.

Because the state did not present laboratory test results showing the substance was methamphetamine, the question is whether the State presented sufficient circumstantial evidence to prove its identity. We hold it did not.

In *State v. Mitchell*, 130 Idaho 134, 937 P.2d 960 (Ct. App. 1997), the Idaho Court of Appeals held that "circumstantial evidence may be sufficient to prove the identity of a substance where laboratory analysis is not available." *Id.* at 136, 937 P.2d at 962. Nevertheless, "it remains incumbent upon the State to provide evidence that meets the standard of proof beyond a reasonable doubt." *Id.* at 136, 937 P.2d at 962. When identifying a substance such as methamphetamine, "[c]hemical analysis of a substance remains the preferable and the most reliable evidence of its identity, and the sufficiency of less direct evidence must be evaluated on a case-by-case basis." *Id.* Viewing the evidence in the light most favorable to the State, there was not substantial evidence in the record to support Tryon's conviction for possession of a controlled substance.

In *Mitchell*, the court held "[t]he entirety of the evidence, when viewed in the light most favorable to the State, is sufficient to support the jury's inference that the substance delivered by [the defendant] was methamphetamine." *Id.* at 137. The informant who purchased the methamphetamine from the defendant in *Mitchell* provided testimony that established he was familiar with methamphetamine. *Id.* at 136–37. The informant had purchased and used methamphetamine before, and the substance he purchased from the defendant was packaged by a method commonly used to package methamphetamine. *Id.* at 136. The informant had also

5

testified he had made at least three prior purchases of methamphetamine from the defendant. *Id.* The informant testified that, with respect to the purchase at issue, the defendant had offered to sell "methamphetamine" to him, he gave the defendant the same price he had previously paid for methamphetamine, and the substance given to him by the defendant looked like methamphetamine. *Id.* at 136–37.

Further, the confidential informant in *Mitchell* testified that after the defendant learned the informant was wearing a wire, the defendant reached into the informant's car, pulled out his hand in a closed fist, and ran away. *Id.* at 137. The court in *Mitchell* held a reasonable jury could conclude from that evidence that the defendant fled with a canister containing methamphetamine. *Id.* According to the court, the defendant's conduct "allows further inference that he had indeed delivered methamphetamine to [the confidential informant] and was anxious to recover and dispose of it when he became aware of [the informant's] body wire." *Id.* Accordingly, the *Mitchell* court held substantial evidence was presented at the trial from which the jury could properly find that the substance the defendant delivered was methamphetamine. *Id.*

Similarly, in *State v. Youmans*, 161 Idaho 4, 383 P.3d 142 (Ct. App. 2016), the court held, without a chemical analysis, that the evidence was sufficient to allow a reasonable jury to conclude, beyond a reasonable doubt, that the substance found in the defendant's purse was a semi-synthetic opioid known as hydrocodone. *Id.* at 10, 383 P.3d at 148. After the defendant was arrested for burglary, officers found seventeen loose prescription pills in her purse. *Id.* at 6–7, 383 P.3d at 144–45. At trial, a detective testified that he used an online database to identify the pills. *Id.* at 7, 383 P.3d at 145. He entered the numbers, shape, and color of the pills into the database, and the database identified the substance and the milligram strength corresponding to those identifiers. *Id.* While the detective did not testify to the chemical nature of the controlled substance, he was able to discuss its classification as a controlled substance based on a comparison of observable characteristics, including shape, color, and, more importantly, numeric identifiers. *Id.* at 146, 383 P.3d at 146.

On appeal, the defendant argued that the jury could not find, beyond a reasonable doubt, that the pills were hydrocodone because they were never chemically analyzed. The court determined that the detective's method of identifying the pills met the evidentiary standard. He used an internet search to identify a prescription pill, he had used this method before to identify

prescription pills, he had training and experience as a law enforcement officer identifying pills using this method, and it was common for officers to use online resources to identify prescription pills in the field. *Id.* at 10, 383 P.3d at 148. Accordingly, the *Youmans* court held that the entirety of the evidence presented at the trial supported the jury's conclusion that the pills found in Youmans' purse were hydrocodone. *Id.*

Here, on the other hand, the State did not present sufficient evidence from which the jury could find, beyond a reasonable doubt, that the substance was methamphetamine. Unlike this case, *Mitchell* and *Youmans* involved certain affirmative acts by law enforcement to identify the substances. In *Mitchell*, the confidential informant had purchased methamphetamine from the defendant in the past and the defendant offered to sell it to him again and represented the substance as methamphetamine. Likewise, in *Youmans*, the detective was able to identify the prescription pill by its numeric identifiers. In this case, Tryon was not a known or suspected methamphetamine dealer. Further, the substance was not clearly identifiable as methamphetamine solely by its appearance, smell, and packaging. No lab report was admitted by the State, and no lab technician testified that a chemical analysis was performed, the nature of the test, or the results of the test. In fact, the only evidence offered to identify the substance came from the testimony of the arresting officer. He testified that he had dealt with methamphetamine on almost a weekly basis, in about one hundred cases; that seventy to eighty percent of the time he found methamphetamine in proximity to syringes or pipes; that the substance in this case was found with two syringes and pipes; and that, in his opinion, the substance looked like methamphetamine.

On cross-examination, however, the detective testified: kosher salt and other white crystalline substances could look like methamphetamine; he did not submit the glass pipes, syringes, or baggies for DNA testing or fingerprinting; and he did not get a blood or urine sample from Tryon to test whether or not she had methamphetamine in her system.

In addition to the detective's testimony, the State attempted to call Ringcamp as a witness. However, Ringcamp was unavailable at the time of Tryon's trial. Nevertheless, over an objection by Tryon's counsel on the basis of her right to confrontation, and after an offer of proof by the State outside of the jury's presence, the district court determined the statements made by Ringcamp while he was in custody were nontestimonial and permitted the detective to testify about those statements. The State asserted the detective's testimony offered proof, through

Ringcamp's admission, that the substance was methamphetamine. Without addressing the constitutional question, we find the detective's testimony does not offer substantial proof that the substance was methamphetamine. On direct examination, the detective testified:

Detective: I asked him whose meth it was.

Mr. Boyd: And what was the response from him?

Detective: First response he stated it wasn't hers.

Mr. Boyd: Was there another response?

Detective: Yes. He told me it was his.

Mr. Boyd: Are you sure those are the exact words that were used?

Detective: I'm not a hundred percent sure if those are the exact words. . . .

On recross-examination the exchange between Ringcamp and the detective was fleshed out more fully by Tryon's counsel:

Mr. Smethers: Did you use the exact verbiage whose meth is this?

Detective: Yes.

Mr. Smethers: And did he say, "it's my meth"? Did he say, "it was mine"? What did he say?

Detective: He—at first he stated it wasn't hers. And then he said, "it's mine, okay," which is depicted in my report.

Mr. Smethers: Did he say, "the meth is mine?"

Detective: No. He didn't say those exact words.

The police report also establishes that Ringcamp was silent regarding the nature of the substance:

While sitting in my vehicle I asked [Ringcamp] about the substance I located. He stated he wanted a lawyer present. I advised him that was fine and both he and [Tryon] were going to go to jail. Without asking him any further question [Ringcamp] stated "it was mine ok."

Even if this Court were to assume Ringcamp's reply to the detective's questioning implied the substance was methamphetamine, the State has not presented substantial evidence that the substance was methamphetamine. In the absence of additional evidence and testimony, proof of the chemical composition of the alleged controlled substance in this case could only be established by chemical analysis.

Therefore, we hold there was not enough circumstantial evidence in the record upon which a reasonable jury could conclude, beyond a reasonable doubt, that Tryon was guilty of possession of a controlled substance.

### B. This court declines to address the remaining issue on appeal.

Tryon argues that the district court erred when it admitted the detective's testimony regarding Ringcamp's statements that the substance was methamphetamine. Tryon claims these statements violated her constitutional right to confront the witnesses against her. Tryon further contends that Ringcamp's statements should not have been admitted because, under the primary purpose test, the circumstances objectively indicate that the primary purpose of the interrogation in this case was to establish or prove past events potentially relevant to later criminal prosecution. Finally, Tryon asserts that because she did not have an opportunity to cross-examine Ringcamp his statements were inadmissible.

Because this Court holds that the evidence in the record does not establish beyond a reasonable doubt that Tryon was in possession of a controlled substance in violation of Idaho Code section 37-2732(c)(1), we decline to address the constitutional issue. "It is well established that when a case can be decided upon a ground other than a constitutional ground, the Court will not address the constitutional issue unless it is necessary for a determination of the case." *City of Sandpoint v. Indep. Highway Dist.*, 161 Idaho 121, 124, 384 P.3d 368, 371 (2016) (quoting *Mullinix v. Killgore's Salmon River Fruit Co.*, 158 Idaho 269, 279, 346 P.3d 286, 296 (2015)).

### VI. CONCLUSION

For the above reasons, we vacate Tryon's sentence and judgment of conviction with instructions for the trial court to enter judgment of acquittal.

Chief Justice BURDICK, Justice BRODY, Justice *pro tem* GRATTON and Justice *pro tem* KIDWELL, CONCUR.

9