

# NUMBER 13-16-00306-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ALMA AMBERSON A/KA ALMA
SALDANA A/K/A ALMA RONJE,                                             Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

## On appeal from the County Court at Law No. 4 of
## Nueces County, Texas.

# OPINION

### Before Justices Rodriguez, Longoria, and Hinojosa
### Opinion by Justice Hinojosa

Appellant Alma Amberson a/k/a Alma Saldana a/k/a Alma Ronje (Amberson) appeals from a judgment convicting her for possession of less than 28 grams of a substance in penalty group 3, a Class A misdemeanor, *see* TEX. HEALTH & SAFETY CODE

ANN. § 481.117(b) (West, Westlaw through 2017 1st C.S.), and sentencing her to thirty days' service in the SPURS work-release program. In three issues, which we construe as two, Amberson complains that (1) the trial court erred in admitting hearsay evidence of drug identity based upon drugs.com and the Drug Identification Bible 2014 to 2015 (Drug Bible) and that such error obligates us to render an acquittal; and (2) even if such evidence is admissible, the evidence of drug identity is legally insufficient to support the jury's verdict.[1] We reverse and remand.

## I. BACKGROUND

The criminal complaint charges Amberson with one count of driving while intoxicated and one count of intentionally or knowingly possessing a controlled substance, specifically clonazepam, in an amount of less than 28 grams. Amberson pleaded not guilty. The relevant testimony elicited during the guilt/innocence phase of the case came from Allen McCollum, a patrol officer with the Corpus Christi Police Department (CCPD) and Pablo Hernandez, a CCPD patrol officer at the time of Amberson's arrest, who had been promoted to detective in the narcotics/vice division three months before trial.

## A. McCollum

McCollum testified that on the evening of March 27, 2014, he witnessed a vehicle driven by Amberson commit a rolling stop. McCollum followed Amberson's vehicle to the next intersection, where Amberson and McCollum came to a stop at a red light. When the traffic light turned green, McCollum observed that Amberson's vehicle "stayed there

---

[1] Amberson also purports to challenge the factual sufficiency of the evidence. However, the Texas Court of Criminal Appeals has abolished factual sufficiency review. *See Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim. App. 2011) (citing *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (plurality op.)). Amberson's factual sufficiency argument essentially challenges the legal sufficiency of the evidence. Accordingly, we construe it as a legal sufficiency challenge.

for an extended amount of time and then proceeded to cross through the intersection." McCollum initiated a traffic stop and radioed for an additional officer.

Upon approaching the vehicle, McCollum noticed an open case of beer in the front and individual beer cans in the center console. McCollum recalled that Amberson's speech was somewhat slurred. After two other police officers arrived, McCollum asked Amberson to exit her vehicle so that he could administer field sobriety tests. McCollum determined that Amberson was driving while intoxicated based on her performance of the field sobriety tests, and he arrested her. Amberson refused to provide McCollum with a breath specimen.

**B.    Hernandez**

Hernandez assisted McCollum by conducting an inventory of Amberson's vehicle. The State's questioning of Hernandez prompted several objections by defense:

> Q.         And tell me more about the inventory of the vehicle?
>
> A.         During the inventory of the vehicle there was a purse on the front passenger floorboard, and in fact, there was a pill bottle, and I looked in the pill bottle. You know, normally just to make sure it's the actual pills inside there, and there was two different types of pills.
>
> Q.         Okay. Can you describe the pills?
>
> A.         There was a couple of pills that were white, rectangular, and two that were just kind of circular and green.
>
> Q.         So what did you do after you discovered them?
>
> A.         With the markings on the pills I used the Drugs.com.
>
> [DEFENSE]:  I'd object at this point, Your Honor, to anything that an outside reference source said is hearsay.
>
> STATE:      The officer used the source to identify the drugs, Your Honor.

3

| | |
|---|---|
| [DEFENSE]: | Which is hearsay, Your Honor. |
| STATE: | The officer used the source to identify the drug. Drugs.com is a recognizable site to identify drugs. |
| [DEFENSE]: | It's also hearsay, Your Honor. |
| COURT: | Well, it would be an exception if it's a learned treatise. Is there anything that recognizes Drugs.com as a learned treatise? |
| [DEFENSE]: | I have some information on that, Your Honor. If you'd like to conduct a bench conference, or if you'd like me to voir dire the witness, or if you'd like the prosecutor to further lay the predicate. |
| COURT: | Well, unless there—were there any other sources used? |
| STATE: | We can use the source now, Your Honor. We have the Drug Bible as well. |
| COURT: | Your response? |
| [DEFENSE]: | My response to that is if the State seeks to attempt to lay the predicate for a learned treatise that has to be through a recognized expert according to Rule of Evidence 803.18, Your Honor, which is the exception for a learned treatise. There's been no such offer or proffer or predicate for this witness's expertise. |

The trial court then excused the jury, and the State and Amberson took Hernandez on voir dire.

### 1. Voir Dire Examination

During voir dire examination, Hernandez testified that at the time of trial he was a detective in the narcotics/vice division.[2] According to Hernandez, the Texas Department of Public Safety (DPS) will not test drugs unless requested by the district attorney's office. Therefore, Hernandez relies on the website drugs.com and the Drug Bible to identify

---

[2] Earlier before the jury, Hernandez testified that at the time of trial he had been in the narcotics/vice division for three months where he would investigate reports of narcotic activity that came through patrol officers and initiate proactive narcotic cases.

4

drugs. Hernandez characterized his training as "hands-on experience." According to Hernandez, he worked in the property room identifying and processing evidence for about six weeks. The State asked, "And prior to [working in the property room] did you have any other kind of training for drugs or narcotics?" to which Hernandez answered, "Not as in depth as I did now." When pressed by the State for additional training, Hernandez testified that "It's really difficult to remember every type of pill markings on our own. Sometimes we'll make cheat sheets, but it's still really hard to remember thousands of pills and the markings that come from it." Hernandez estimated that he used the Drug Bible "[m]aybe a 100 times" to identify drugs.

On cross examination, Hernandez acknowledged that drugs.com contains a disclaimer and that it is not necessarily a reliable source. Hernandez also acknowledged that he has no medical training and no experience administering drugs. As for the Drug Bible, Hernandez testified that it is "strictly for law enforcement professional use only." But, when pressed on whether there is something that restricts the purchase of the Drug Bible from someone who is not in law enforcement, Hernandez answered, "I couldn't tell you if it—if there is or isn't."

After questioning Hernandez, Amberson objected to his testimony and reliance on drugs.com and the Drug Bible. Amberson argued that Hernandez was not an expert because Hernandez acknowledged that anyone can look up a code and that he lacked any scientific or medical training that would enable him to identify a drug without resorting to a book. Therefore, according to Amberson, Hernandez could not rely on a learned treatise, assuming drugs.com and the Drug Bible constituted such.

The trial court overruled Amberson's objections.

5

### 2. Testimony Before the Jury

When the jury returned to the courtroom, Hernandez testified that in his eight and a half years as a police officer he had "come in contact with all types of drugs." While examining Hernandez, the State offered and the trial court admitted the pill bottle that Hernandez found during his inventory. The patient referenced on the pill bottle's label was "Alma Saldana," and the prescription was for hydrocodone acetaminophen. Hernandez stated that he has used the Drug Bible "[m]aybe 20, 30 times" to identify drugs and that, over the course of his career, he has identified drugs over a 100 times. By comparing each pill's alpha and numeric markings, color, and shape with the information in the Drug Bible and on drugs.com, Hernandez testified that the pill bottle contained hydrocodone and two clonazepam pills.

On cross examination, Hernandez acknowledged that drugs.com disclaimed any errors or misinformation. Hernandez recounted that DPS lab policy is that if a police department can identify a drug using two independent sources, then, unless authorized by the district attorney, it will not test a sample. Generally, DPS, according to Hernandez, will test felony amounts of cocaine, methamphetamine, heroin, crack cocaine, THC oils, wax, and synthetic marijuana. Hernandez acknowledged that in some circumstances there can be counterfeit pills and that the CCPD does not employ an identification technician.

### C. Verdict and Judgment

The jury was charged with one count of driving or operating a motor vehicle in a public place while intoxicated and one count of possession of a controlled substance, namely clonazepam, in an amount of less than 28 grams. It returned a not guilty finding

6

as to the first count and a guilty finding as to the second count. Amberson elected to have the trial court assess punishment. The trial court signed a judgment of conviction as to the possession of a controlled substance count and sentenced Amberson to thirty-days' service in the SPURS work-release program. This appeal followed.

## II. LEGAL SUFFICIENCY

In Amberson's second issue, she contends that even if it was not error for the trial court to allow Hernandez to testify as to the steps he took to identify the pills, the evidence of drug identity is legally insufficient to support the jury's verdict. In an unpublished opinion, we have already rejected a substantially similar argument. In *Pineda v. State*, the appellant argued that the evidence was legally insufficient to support a finding that he possessed hydrocodone. *See* No. 13-13-00574-CR, 2015 WL 5311237 at *4 (Tex. App.—Corpus Christi Sep. 10, 2015, no pet.) (mem. op., not designated for publication). We recounted that the drug-evidence custodian determined the chemical composition and weight of the pill by using drugs.com and the steps that the custodian took in making the determination. *Id.* at *4–5. The custodian's testimony differed from Hernandez's testimony in that he testified that in six years of using drugs.com the website had not misidentified a drug and the custodian found it to be a reliable source. *Id.* at *5. We concluded that the jury was free to judge the custodian's credibility as well as the strength of the evidence and overruled the appellant's legal sufficiency challenge. The same is true in this case.

Amberson's second issue is overruled.

7

### III. ADMISSIBILITY OF EVIDENCE

In Amberson's first issue, she asserts that the trial court erred in admitting hearsay evidence of drug identity based upon drugs.com and the Drug Bible. Amberson further argues that Hernandez was not qualified as an expert, and therefore, he could not rely on the learned treatise exception. The State responds by arguing that: (1) drugs.com and the Drug Bible do not constitute hearsay; (2) Hernandez's description of the steps he took to identify the pills constitutes lay witness testimony; and (3) even if the statements in drugs.com and the Drug Bible constitute hearsay, they fall within exceptions to the hearsay rule regarding (1) learned treatises and (2) market reports and similar commercial publications. *See* TEX. R. EVID. 803(17), (18). The State's first and second responsive arguments present threshold questions that we must address before returning to Hernandez's qualifications.

### A. Standard of Review

An appellate court reviewing a trial court's ruling on the admissibility of evidence must utilize an abuse-of-discretion standard of review. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999). In other words, the appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred*, 15 S.W.3d at 542; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). In addition, the appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Hoyos v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1998); *Hardesty v. State*, 667 S.W.2d 130, 133 n. 6 (Tex. Crim. App. 1984).

The abuse-of-discretion standard of review also applies to the admissibility of expert testimony. *Lagrone v. State*, 942 S.W.2d 602, 616 (Tex. Crim. App. 1997). Among the nonexclusive factors that a trial court could consider in determining scientific reliability is the qualifications of the testifying expert. *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

"Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character." *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008); *see also Estrada v. State*, 313 S.W.3d 274, 313 (Tex. Crim. App. 2010) ("[I]t is the responsibility of the proponent to inform the court of the existence of an exception to the hearsay rule.").

## B.     Hernandez's Sources and Hearsay

From Amberson's objection in the trial court, she characterized drugs.com and the Drug Bible as hearsay and possibly a learned treatise. Therefore, a threshold matter is determining whether Amberson's characterization holds true. If Amberson was correct, the burden then shifted to the State to establish an applicable exception. *See Taylor*, 268 S.W.3d at 578–79.

The State opposes Amberson's characterization on the ground that in order to constitute hearsay, the statement must be uttered by a person, and as support, it references Texas Rule of Evidence 801(a), which provides that a "statement" means "a person's oral or written verbal expression, or nonverbal conduct that a person intended as a substitute for verbal expression." TEX. R. EVID. 801(a). The State also references *Davis v. State*. No. 05-12-00021-CR, 2013 WL 3294716 at *2 (Tex. App.—Dallas Jun.

9

26, 2013, pet. ref'd) (op., not designated for publication). In *Davis*, the trial court permitted a forensic fingerprint expert to testify that she received the fingerprint and conducted computer analysis to find potential subjects for comparison. *Id*. at *1. Over the appellant's hearsay objection, the forensic fingerprint expert stated that the computer system linked the fingerprint to appellant. *Id*. On appeal, the appellant argued that the computer's identification of appellant as the source of the fingerprint amounted to hearsay testimony. *Id*. at *2. In overruling the appellant's issue, the court wrote:

> . . . Here, [the forensic fingerprint expert] received the analysis from a computer, not a person. By definition, therefore, the computer was not a declarant and the information was not hearsay.
>
> This is not a situation where the information provided by the computer was merely feedback of computer-stored data, which would be hearsay. The information reflected on the computer readout is the result of the computer's internal operations. Because the computer in this case was not a declarant, the data it generated was not a statement and could not be hearsay.

*Id*. (citation omitted).

During the State's voir dire examination of Hernandez, he testified:

Q. And can you go over specifically what training you have had with identifying drugs?

A. Yes. If we come across any kind of pills the markings on them go through Drugs.com, identify them through there. They show you a picture of the exact pill that you're looking at, and it tells you what it is right there, how many milligrams, the dosage it is. And also, if you wanted to confirm with it, the Drug Bible right here, it tells you the exact same thing with the markings on it.

The process described by Hernandez is "a situation where the information provided by the computer was merely feedback of computer-stored data, which would be hearsay." *See id.* In other words, Hernandez described a situation where drugs.com and the Drug Bible merely returned computer-stored data.

10

We conclude, based on the record before us, that the information relied on by Hernandez constitutes hearsay. *Id.* Therefore, its admissibility depends on whether Hernandez's testimony was either properly lay or expert opinion testimony.

## C. Lay Witness Testimony

The State contends that Hernandez's description of the steps he took to identify the pills constitutes proper lay witness testimony. As support, the State references *State v. Youmans*, an opinion from the Idaho Court of Appeals. *See* 383 P.3d 142, 146 (Idaho Ct. App. 2016, no pet.). The holding in *Youmans*, quoted by the State in its brief, provides:

> We agree that Det. Paporello testified as a lay witness. He described the steps he personally undertook to identify the loose pills found in Youmans' purse, which included utilizing an unnamed online database. Further, Det. Paporello testified that the pills were hydrocodone, the controlled substance with which Youmans was charged with possessing, and that the manner in which he identified the pills was consistent with the practice of other officers. Finally, using such a database does not require scientific, technical, or specialized knowledge. Det. Paporello did not speak to the chemical nature of the controlled substance; rather, only to its classification, which could be determined by comparison of observable characteristics, including shape, color, and numeric identifiers. The probative value of this testimony would have been greater if the database was named and there was consistency in the online sources used by officers in the field to identify prescription pills. Nevertheless, the evidence carries probative value that the online database used was adequate to specifically identify what type of prescription pills were found in Youmans' purse.

*Id.* With all due respect to the Idaho Court of Appeals, we find that its holding regarding lay testimony does not comport with the Texas Court of Criminal Appeals' interpretation of Texas Rule of Evidence 701, which provides, "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." TEX. R. EVID. 701.

11

In *Osbourn v. State*, the Texas Court of Criminal Appeals wrote:

> Both lay and expert witnesses can offer opinion testimony. Rule 701 covers the more traditional witness—one who "witnessed" or participated in the events about which he or she is testifying—while Rule 702 allows for a witness who was brought in as an expert to testify. A witness can testify in the form of an opinion under Rule 701 if the opinions or inferences are (a) rationally based on his or her perceptions and (b) helpful to the clear understanding of the testimony or the determination of a fact in issue. *Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997). Perceptions refer to a witness's interpretation of information acquired through his or her own senses or experiences at the time of the event (i.e., things the witness saw, heard, smelled, touched, felt, or tasted). Since Rule 701 requires the testimony to be based on the witness's perception, it is necessary that the witness personally observed or experienced the events about which he or she is testifying. *Id.* at 898. Thus, the witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations. This also incorporates the personal knowledge requirement of Rule 602 which states that a witness may not testify to a matter unless he or she has personal knowledge of the matter. *Bigby v. State*, 892 S.W.2d 864, 889 (Tex. Crim. App. 1994). There is, however, a provision in Rule 602 for opinion testimony by expert witnesses which allows a person testifying as an expert under Rule 703 to base his or her opinion on facts and data that are of a type reasonably relied upon by experts in the field. TEX. R. CRIM. EVID. 703. Thus, expert testimony serves the purpose of allowing certain types of relevant, helpful testimony by a witness who does not possess personal knowledge of the events about which he or she is testifying.

92 S.W.3d 531, 835–36 (Tex. Crim. App. 2002). *Osbourn* recognizes a lay witness's temporal proximity to the occurrence in question and an expert's relative removal from the occurrence in question.

The State would have us read Hernandez's visual observation of the pills, the information on drugs.com and in the Drug Bible, and the reconciliation of the observation and the information as part of Hernandez's "perception." This proves to be too much. We believe that the reconciliation prong in this case is the province of an expert.

Our belief is further supported by the rules governing the personal knowledge of a witness. In *Sterling v. State*, the appellant complained that a pharmacist identified pills

12

as valium based on their appearance and that the State failed to introduce chemical analysis of the drug. 491 S.W.2d 274, 277 (Tex. App.—Corpus Christi 1990, no pet.) (en banc). Relying on Texas Rule of Evidence 602, which provides that a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter, *see* TEX. R. EVID. 602, we rejected the appellant's complaint. *See Sterling*, 491 S.W.2d at 277. Specifically, we held that a person who is familiar with a substance may identify it. *Id.*

In this case, Hernandez was not able to identify clonazepam from personal knowledge as the pharmacist did in *Sterling*. Instead, he relied on drugs.com and the Drug Bible. However, "helpful testimony by a witness who does not possess personal knowledge of the events about which he or she is testifying" is expert testimony. *Osbourn*, 92 S.W.3d at 836. Therefore, we must determine whether Hernandez was indeed an expert.

**D.     Hernandez as an Expert and the Learned Treatise Exception**

The thrust of Amberson's argument in the trial court was that Hernandez was not qualified as an expert, and therefore, he could not rely on the learned treatise exception. Because we have already determined that drugs.com and the Drug Bible, on this record, constitute hearsay and that Hernandez lacked the personal knowledge and contemporaneous perception to constitute lay witness testimony, it was incumbent on the State to establish an applicable exception to the hearsay rule. *See Taylor*, 268 S.W.3d at 578–79.

Texas Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or

13

otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

TEX. R. EVID. 702. The State asserts, without any record reference, that "Hernandez testified at length about all of his experience and training with drugs as a patrol officer and a detective." From our review of the record, Hernandez worked in the property room for six weeks, he would "make cheat sheets" of pills because "it's still really hard to remember thousands of pills on our own", and he used the Drug Bible "[m]aybe a 100 times" to identify drugs.

Hernandez failed to explain what training he received in pill identification. Amberson argues that Hernandez's opinion "was just a direct recital of hearsay material" and that it "required no specialized knowledge." Indeed, the State's position that Hernandez provided merely a lay opinion undermines its position that Hernandez is also an expert at identifying pills. An "expert's scientific, technical, or other specialized knowledge" must "help the trier of fact to understand the evidence or to determine a fact in issue." *See id.*

Amberson's first issue is sustained.[3]

E.    **Harm Analysis**

The violation of an evidentiary rule that results in the erroneous admission of evidence constitutes nonconstitutional error. *See* TEX. R. APP. P. 44.2(b); *Geuder v. State*, 142 S.W.3d 372, 376 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Under the

---

[3] The State contends that drugs.com and the Drug Bible fall under the exception to the hearsay rule regarding market reports and similar commercial publications. As noted above, it was incumbent on the State to establish this in the trial court. *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008). The State failed to do so. Therefore, this argument is unpreserved, and we need not address it. *See id.*; *see also* TEX. R. APP. P. 33.1, 47.1.

14

applicable standard for nonconstitutional error, we must disregard the trial court's error, if any, unless we determine it affected a defendant's substantial rights. TEX. R. APP. P. 44.2(b). A defendant's substantial rights are affected when the error has a substantial and injurious effect or influence on the jury's verdict. *Id.* If the error had no or only a slight influence on the verdict, the error is harmless. *Id.* We should not overturn a criminal conviction for nonconstitutional error if we, "*after examining the record as a whole*, ha[ve] fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011) (quoting *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001)).

The only evidence identifying the clonazepam came from Hernandez and his reliance on drugs.com and the Drug Bible. On this record, we cannot say that we have a fair assurance that the error did not influence the jury, or influenced the jury only slightly. Accordingly, we find the error harmful.

## IV. CONCLUSION

The judgment is reversed, and the case is remanded for further proceedings.

LETICIA HINOJOSA
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
18th day of January, 2018.