

# NUMBER 13-20-00250-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

KENNETH ROY SOWELL,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

### On appeal from the 156th District Court
### of Live Oak County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Kenneth Roy Sowell appeals his conviction of assault family violence by impeding breath, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B); TEX. FAM. CODE ANN. § 71.0021(b). By three related issues, which we consider as one, Sowell argues that the court erred by allowing a lay witness to give an expert opinion. We affirm.

# I.    BACKGROUND

At trial, complainant Leeann Burt[1] testified that on or about July 30, 2019, Sowell entered the RV that she and Sowell were sharing.[2] Burt testified that when Sowell walked into the RV that night, he appeared to be "red-eye[d]" and "pissed." Sowell picked up Burt's computer, threw it, and began arguing with her.

Burt testified that after she "said some words" back, Sowell struck her repeatedly with his fist. Burt then got a trash bag to gather her things and leave. Sowell began drinking again and threw a beer can at her and it hit her on her head. Burt retreated to the bathroom and began cleaning up the beer when he pushed her, causing her head to hit the toilet. After further argument, Sowell punched Burt and took her car keys. According to Burt, Sowell grabbed her and choked her while taking her outside and down the stairs that led up to the entrance of the RV. Burt testified that she had trouble breathing while Sowell was grabbing her throat. Once they were outside, Sowell picked her up by the throat and slammed her onto a wagon filled with trash.

Burt testified she rolled off the wagon and ran to Dave Sowell's[3] nearby house. Dave testified an upset Burt barged through his door and partially explained what had happened. Dave retrieved Burt's keys and phone from Sowell's RV so that Burt could

---

[1] The parties' briefs, the indictment, as well as other documents contained in the clerk's record, and reporter's record contain different spellings of the complainant's name. We will refer to the complainant using the spelling provided by the complainant at trial.

[2] Burt and Sowell had been dating and living together, off and on, since 2010. However, as of July of 2019, the two were no longer dating, and Burt was in the process of moving out of the RV and into her own apartment. Sowell claimed it was about two weeks past the deadline that he and Burt agreed she would move.

[3] Dave Sowell is Kenneth Ray Sowell's brother.

leave. Dave testified at trial that he did not observe the majority of the injuries shown by the pictures taken in the emergency room.

Burt testified that after calling her sister, Paula Flores, she left to meet Flores at a store. Burt claimed it took her an hour to get to the store because she kept blacking out and had to pull over multiple times to vomit. Burt stated that, upon arriving at the store, she opened the door and fell out of her vehicle, and she threw up again and urinated on herself. Burt further stated that she was already wet because she had urinated when Sowell was choking her. Flores testified that she observed her sister fall out of her vehicle. Flores further attested Burt's face was bloody, her back looked like "hamburger meat," and she had urinated on herself. Flores also added that the bruises on Burt's neck resembled handprints. Flores got into Burt's vehicle, and they picked up their mother on the way to the emergency room.

Daniel Caddell, an investigator with the Live Oak County Sheriff's Office, visited Burt that night in the hospital, observed Burt's injuries and took statements about the incident. Additionally, Caddell and a nurse took several photos of Burt's injuries on the night of the disturbance. The photos, which were admitted at trial, depicted significant bruising on Burt's neck, scratches across her back, and bumps on her head.

Caddell testified that the marks on Burt's neck were consistent with signs of strangulation based on his experience with strangulation cases. During Caddell's testimony, Sowell objected on the basis that Caddell was offering expert opinion testimony and requested a hearing outside the presence of the jury.[4] *See* TEX. R. EVID.

---

[4] Preemptively, Sowell objected twice to Caddell's testimony as a lay witness. Sowell expressed his belief that there should be a Rule 702 hearing "outside the presence of the jury to determine what the

3

702. The trial court granted Sowell's request for a hearing, and the jury was escorted out of the courtroom.

The State argued Caddell's testimony was being offered as a lay witness opinion, rather than an expert witness opinion, because he was sharing his opinion based on his observations and his years of experience with similar cases. *See* TEX. R. EVID. 701. Caddell acknowledged that he did not have medical training other than some first aid training but did have some specialized training in sexual assault and family violence cases. Caddell reiterated that his testimony was based on his law enforcement experience and training rather than any specific medical knowledge.

Caddell testified that he had over forty years' experience as a certified peace officer and had investigated thousands of assaults—including several hundred allegations of strangulation. He also had specialized training in sexual assault family violence cases, with part of the curriculum covering strangulation, and he was a Sexual Assault Family Violence Investigator Course instructor. The trial court overruled the objection and allowed Caddell to testify. Caddell further testified that vomiting and urination were also consistent with strangulation.

Sowell also testified at trial and acknowledged he assaulted Burt. Sowell denied ever choking or "slamming" her, but rather, he claimed they had fallen down the stairs outside the RV. Sowell also suggested that the injuries to Burt's neck could have been from a rough, consensual sexual encounter between the two a few nights before.

---

nature of his expertise is and what the basis is for those opinions." However, both times the objection was overruled following the prosecution's assurances that Caddell was not testifying as an expert, but rather based on his experience.

However, Sowell admitted that he did not observe any bruising on Burt's neck on the days following the sexual encounter previously mentioned.

At the conclusion of the trial, the jury found Sowell guilty of assault family violence by impeding breath. Sowell elected for punishment to be determined by the trial court, which sentenced him to five years' confinement, probated for three years. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Appellate courts review a "trial court's ruling on the admissibility of evidence under an abuse of discretion standard, and we must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020); *Rodgers v. State*, 205 S.W.3d 525, 528 (Tex. Crim. App. 2006). The ruling is examined in light of what was presented before the trial court at the time that the ruling was made. *Rodgers*, 205 S.W.3d at 525.

Lay witness opinion testimony is governed by Texas Rule of Evidence 701, while expert witness opinion testimony is governed by Rule 702. TEX. R. EVID. 701, 702. "Rule 701 covers the more traditional witness—one who 'witnessed' or participated in the events about which he or she is testifying—while Rule 702 allows for a witness who was brought in as an expert to testify." *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002); *see* TEX. R. EVID. 701, 702. Specifically, under Rule 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." TEX. R. EVID. 701; *Osbourn*, 92

5

S.W.3d at 535. "Perceptions refer to a witness's interpretation of information acquired through his or her own sense or experiences at the time of the event." *Id.* "Thus, the witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations." *Id*.

On the other hand, under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Courts have interpreted Rule 702 to:

> set out three separate conditions before expert testimony can be admitted: '(1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case.'

*Wells*, 611 S.W.3d at 426 (quoting *Rodgers*, 205 S.W.3d at 527).

"When a witness who is capable of being qualified as an expert testifies regarding events which he or she personally perceived, the evidence may be admissible as both Rule 701 opinion testimony and Rule 702 expert testimony." *Osbourn*, 92 S.W.3d at 536. "A witness may qualify to give testimony both under Rule 702—because of his or her superior experiential capacity—and under Rule 701, if the witness's testimony and opinion are based upon firsthand knowledge." *Id*.

We first review whether the admission of the evidence was erroneous, and if so, we then consider whether the erroneous admission caused harm. *Amberson v. State*, 552 S.W.3d 321, 328–330, 334–35 (Tex. App.—Corpus Christi–Edinburg 2018, pet.

6

ref'd). If there is no error, we will uphold the trial court's ruling. *Osbourn*, 92 S.W.3d at 538–39.

### III.    ANALYSIS

On appeal, Sowell argues that the trial court committed reversible error when it allowed Caddell to testify as a lay witness rather than designating Caddell as an expert witness and requiring him to meet the qualifications to testify as an expert witness. *See* TEX. R. EVID. 701, 702. Specifically, Sowell contends that Caddell's opinion that the injuries on Burt's neck, self-urination, and vomiting were consistent with strangulation amounted to impermissible expert opinion testimony. *See id.*

We first consider whether Caddell's testimony could be admissible as lay witness opinion testimony. *See Osbourn*, 92 S.W.3d at 538. First, the lay opinion testimony must be rationally based on the witness's perception. *See* TEX. R. EVID. 701; *Osbourn*, 92 S.W.3d at 538.   Caddell's opinion was based on his prior experience of working on "hundreds" of strangulation cases. *See Osbourn*, 92 S.W.2d at 538. Caddell's extensive history in dealing with strangulation cases allowed him to identify marks on Burt's neck, that she had vomited, and that she urinated, as indicators that strangulation had occurred. *See id.* ("The personal experience and knowledge of a lay witness may establish that he or she is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge." (citing *United States v. Paiva*, 892 F.2d 148, 157 (1st Cir. 1989))).

This opinion did not require significant expertise to develop and did not rely on an underlying scientific theory. *See Osbourn*, 92 S.W.3d at 537; *see also Hawkins v. State*,

No. 06-08-00087-CR, 2009 WL 30255, at *4 (Tex. App.—Texarkana Jan. 7, 2009, pet. ref'd) (mem. op., not designated for publication) ("[A]s a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met."); *Hollis v. State*, 219 S.W.3d 446, 467 (Tex. App.—Austin 2007, no pet.) (allowing an officer to give lay witness testimony—based on his experience as an officer—that people who manufacture methamphetamine tend to develop discoloration and blisters on their hands). We find Caddell's opinion to be rationally based on his experience and what he observed. *See* TEX. R. EVID. 701(a). *Cueva*, 339 S.W.3d at 880 ("Police officers may generally offer lay-opinion testimony concerning matters about which they have personal knowledge and experience in their employment as a law enforcement officer . . . ."). Therefore, because Caddell's opinion was both rational and based on events that he personally observed, it was admissible as lay witness opinion testimony under the first test of Rule 701. *See* TEX. R. EVID. 701(a).

Second, a lay witness's opinion testimony must be helpful to understand the witness's testimony or to determining a fact at issue. *See id.* Here, a key fact at issue was whether Sowell impeded Burt's breath . Because Caddell's opinion testimony was directly related to the issue and added facts to help the jury in determining whether Sowell strangled Burt, it satisfies the second test for lay witness opinion testimony under Rule 701. *See* TEX. R. EVID. 701(b); *Hartwell,* 476 S.W.3d at 537. Accordingly, the trial court did not abuse its discretion by permitting Caddell to testify as a lay witness because the admittance was not beyond the zone of reasonable disagreement. *See Wells*, 611 S.W.3d

8

at 427.

Because Caddell's testimony was admissible as lay witness opinion testimony, we do not need to address whether he could also qualify to give expert witness testimony. *See* Tex. R. App. P. 47.1. Sowell's sole issue is overruled.

## IV.    Conclusion

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
Tex. R. App. P. 47.2 (b).

Delivered and filed on the
29th day of July, 2021.

9