

# NUMBER 13-20-00485-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JUSTINE LARAY VILLARREAL,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                           Appellee.

### On appeal from the 377th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Justices Hinojosa, Tijerina, and Silva**
**Memorandum Opinion by Justice Silva**

Appellant Justine Laray Villarreal appeals his conviction for attempted kidnapping, a state jail felony enhanced to a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 15.01 (criminal attempt), 20.03 (kidnapping). By a single issue, Villarreal asserts that the trial court reversibly erred in admitting hearsay testimony. *See* TEX. R. EVID. 801. We affirm.

## I.  BACKGROUND

Villarreal was indicted for the offense of attempted kidnapping, alleged to have occurred on or about December 5, 2019. Villarreal waived his right to a jury trial and proceeded with a bench trial. The trial court heard testimony from the complainant M.A.G.,[1] a witness to the offense, two Victoria Police Department (VPD) officers, and Villarreal's former paramour and her employer. Villarreal did not testify.

M.A.G., a thirteen-year-old girl, testified that on the morning of December 5, 2019, she was walking alone to school when she was solicited at a stop sign by an unknown male in a gray car. M.A.G. said the man exposed his genitals to her, asked her if she "need[ed] a ride," and proceeded to masturbate in front of her. M.A.G. immediately declined and turned around to walk back home. According to M.A.G., the man continued to follow her in his vehicle, "driving ahead of [her]," and then stopping to "wait[]" for her to cross his path. M.A.G. testified that she began running "[a]s fast as [she] could." She ran on the street, cut through an open field, and changed course several times trying to lose him. M.A.G. was standing in a residential yard when an unknown male driving "a green truck" pulled up and asked her if she was okay. "[I]n tears and [in] shock," M.A.G. was unable to respond. M.A.G. testified that the man told her that he was on the phone with the police, and she eventually got into his truck. She said that he tried to catch up to the gray car to get license plate information but was unsuccessful. He drove M.A.G. to her middle school, where they waited for the police to arrive. At trial, M.A.G. identified

---

[1] To protect the identity of the minor child, we refer to the child by her initials. *See* TEX. R. APP. P. 9.8 cmt.

Villarreal as her pursuer. M.A.G. testified that the only thing that was going through her mind throughout the whole ordeal was that Villarreal was going to "[r]ape" her. The trial court admitted the Child Advocacy Center interview of M.A.G.

Benito Ozuna Jr. was identified at trial as the driver of the green truck. Ozuna testified that he had been on his way to work on December 5th when he was forced to drive around a gray, "[e]arly 2000s," four-door Chevrolet Impala with tinted windows that was stopped at a stop sign for a prolonged period. Ozuna testified he also noticed "a young girl on the sidewalk" near the Impala and "figured maybe they knew each other." Ozuna continued to observe their interaction through his rear view mirror as he drove away. Ozuna witnessed the Impala repeatedly "pass[] the girl up" and then pull up ahead "where she would have to pass him again." Ozuna estimated that the driver of the Impala tried to engage M.A.G. "at least six times." After Ozuna saw M.A.G. run across the street, Ozuna dialed 9-1-1 and attempted to intervene. Ozuna found M.A.G. standing in the middle of a yard "at a standstill, pretty much scared" when he caught up to her. Ozuna testified that by the time he convinced M.A.G. to get into his truck, the Impala had turned the street corner, and Ozuna shortly thereafter lost sight of the vehicle. Ozuna described the driver of the Impala as a "Hispanic or maybe black-Hispanic mix" male "by the look of the hair." Ozuna's 9-1-1 call recording was admitted into evidence without objection, wherein Ozuna reiterated much of the same statements he testified to at trial, and his initial interactions with M.A.G. can be heard.

VPD Officer Haley Watkins testified that on December 5th, she was dispatched to a nearby middle school after receiving a welfare call concerning a young female. The

3

following colloquy, in pertinent part, occurred:

[State:] And what was the [caller's] name, or what—what was the person's name?

[Watkins:] Mr. Ozuna.

[State:] Do you recall his first name?

[Watkins:] I believe Benito.

[State:] And what did he tell you happened?

[Defense counsel:] Objection, hearsay, Your Honor.

THE COURT: Objection is overruled.

[State:] You can answer.

[Watkins:] I'm sorry. Can you repeat the question?

[State:] What did he tell you happened?

[Watkins:] He said that he was traveling on East North Street to turn onto Lone Tree, when he observed a female walking towards [the middle school]. And she was stopped by a silver vehicle, a Chevy Impala. And he thought it might have been a parent at first. So he just kept driving. But then he noticed that the female turned back around to walk towards Ben Jordan Street. So he got concerned and turned around and just stopped in a parking lot—I do not recall which parking lot at this time—and just continued to watch the female just to make sure that she was okay.

[State:] And did he tell you whether he ultimately picked the female up or not?

[Defense counsel:] Objection, hearsay, Your Honor.

THE COURT: Objection is overruled.

[Watkins:] Yes. He said after watching the female and the interaction between the female and the subject in the

4

> Impala that he became concerned. So he went and saw the—the female running away from the vehicle. So he went and followed after, and eventually got to the female on Nelson [S]treet and was able to get the female inside the car and take her to [the middle school]. That's when he called 9[-]1[-]1.

Watkins's VPD-issued body camera recording was admitted into evidence without objection. The footage included Watkins's questioning of Ozuna, wherein she elicited the same testimony she testified to at trial.

VPD Investigator Christina Tate also spoke with Ozuna on December 5th, and her recorded interview with Ozuna was also admitted into evidence. Tate testified she ruled out several possible suspects using the vehicle and driver descriptions provided by M.A.G. and Ozuna before ultimately connecting Villarreal to the offense. In the course of VPD's investigation, nearby residents provided footage captured by their home doorbell camera. The recording was admitted, and M.A.G. can be seen running across a front yard at approximately 8:31 a.m., followed closely by a slow-moving gray four-door vehicle. The same vehicle is observed driving the opposite direction at a fast speed trailed by a green truck at approximately 8:34 a.m.

Crystal Nuells, Villarreal's former paramour, testified that in December 2019, she had just recently begun making payments towards a gray, four-door 2008 Chevrolet Impala after Villarreal "got into an accident" driving her previous vehicle. Nuells testified that on the morning of December 5th, Villarreal was helping her distribute newspapers for her paper delivery route. According to Nuells, they finished at "[l]ike, 7:30 [a.m.], 7:00

5

[a.m.]"[2] and returned to her residence at "about 8:00 [a.m.], 8:15 [a.m.]." Nuells fell asleep soon thereafter, and when she awoke around 1:00 p.m., Villarreal was not home. Villarreal returned to the residence "[a]round maybe 2:00 [p.m.], 2:30 [p.m.]" claiming to have been at his mother's house. Nuells recalled seeing images relating to the kidnapping investigation and noted that her car matched the description. Nuells testified she asked Villarreal "about it," and he just stated "that wasn't the car." Nuells opined at trial that she never considered him as possible suspect because "he has five daughters," and she did not "think he would do it."

Following a three-day bench trial, Villarreal was found guilty, he pleaded true to an enhancement paragraph alleging a prior conviction for aggravated assault with a deadly weapon, and the trial court sentenced Villarreal to ten years' imprisonment. This appeal followed.

## II.     DISCUSSION

By his sole issue, Villarreal argues that the trial court "erred when it admitted the responding officer's hearsay testimony over objection, causing harm which tipped the scales, resulting in the finder of fact deciding to convict."

### A.     Standard of Review and Applicable Law

We review a trial court's decision to admit objected-to evidence under an abuse of discretion standard. *Colone v. State*, 573 S.W.3d 249, 263–64 (Tex. Crim. App. 2019).

---

[2] Shannon Cash, the newspaper's circulation manager, testified that Nuells had a distribution deadline of 6:00 a.m., and although Cash would "get complaints often" from customers on Nuells's route when she distributed past the deadline, records indicated that Nuells did not receive any complaints on the day in question. Cash surmised that it was "statistically" likely that Nuells had met her 6:00 a.m. deadline.

Unless it is outside the zone of reasonable disagreement, we uphold the trial court's ruling. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018).

Hearsay is a written or oral statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(a), (d); *Patterson v. State*, 606 S.W.3d 3, 33 (Tex. App.—Corpus Christi–Edinburg 2020, pet. ref'd). Hearsay is inadmissible evidence unless expressly excepted or excluded from this general rule by statute or the rules of evidence. TEX. R. EVID. 802.

Admission of inadmissible hearsay, however, constitutes non-constitutional error. *Amberson v. State*, 552 S.W.3d 321, 334 (Tex. App.—Corpus Christi–Edinburg 2018, pet. ref'd); *see* TEX. R. APP. P. 44.2(b). Its admission will be considered harmless if the reviewing court, "*after examining the record as a whole,*" is reasonably assured that the error did not have "a substantial and injurious effect or influence" on the verdict or "had no or only a slight influence on the verdict." *Amberson*, 552 S.W.3d at 334 (quoting *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011)); *see* TEX. R. APP. P. 44.2(b); *see also Prestiano v. State*, 581 S.W.3d 935, 944 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (undergoing the same analysis on appeal when reviewing a hearsay objection made during a bench trial). We consider the following in our examination of the record: "(1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence supporting the verdict; and (4) whether the State emphasized the error." *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021).

**B.    Analysis**

Assuming arguendo that the statements here were inadmissible hearsay,[3] for reasons explored below, we conclude the error was harmless. *See id.* ("[a]ssuming for the sake of argument" inadmissible hearsay was admitted and concluding the admission was harmless non-constitutional error); *see also Rodriguez v. State*, No. 13-13-00572-CR, 2015 WL 6395481, at *8 (Tex. App.—Corpus Christi–Edinburg Oct. 22, 2015, pet. ref'd) (mem. op., not designated for publication) (same).

Watkins testified, over Villarreal's hearsay objection, what Ozuna reportedly told her that he observed on December 5th. However, Watkins's reiteration of Ozuna's observations was not characteristically harmful, described no actual offense, and did not identify Villarreal with any particularity. *See* TEX. PENAL CODE ANN. §§ 20.01 (definitions), 20.03 (kidnapping); *Crawford v. State*, 562 S.W.3d 106, 111 (Tex. App.—Corpus Christi–Edinburg 2018, pet. ref'd); *see, e.g., Yanez v. State*, 199 S.W.3d 293, 308 (Tex. App.—Corpus Christi–Edinburg 2006, pet. ref'd) (concluding the admission of hearsay statements at trial did not affect appellant's substantial rights when the hearsay statements connected appellant to a get-away vehicle but were otherwise not "inherently harmful or prejudicial" and there was other evidence connecting defendant to the offense).

Moreover, the State elicited the same facts underlying Watkins's hearsay

---

[3] The State argues for the first time on appeal that the complained-of statements—the officer's recitation of what Ozuna told her—fell under two exceptions to hearsay. *See* TEX. R. EVID. 803(1) (present sense impression), (2) (excited utterance). However, it was "incumbent on the State to apprise the trial court of all hearsay exceptions" at trial. *Amberson v. State*, 552 S.W.3d 321, 331 (Tex. App.—Corpus Christi–Edinburg 2018, pet. ref'd) (conducting an "[e]ven if" analysis on rehearing). "Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character." *Id.* at 327 (quoting *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008)).

testimony elsewhere. Ozuna testified at trial regarding his own recollections with far more specificity—describing Villarreal, Villarreal's vehicle, and what he observed as Villarreal's multiple attempts to pursue and force unwanted engagement with M.A.G. The exact statements Ozuna relayed to Watkins, captured on Watkins's body camera recording, were also admitted without objection—as was Ozuna's 9-1-1 call recording and recorded interview with Tate, which further included substantially similar statements. *See Prestiano*, 581 S.W.3d at 946 (concluding hearsay testimony cumulative of other evidence in the record was harmless); *see also Sanchez v. State*, No. 13-18-00370-CR, 2020 WL 2610799, at *4 (Tex. App.—Corpus Christi–Edinburg May 21, 2020, pet. ref'd) (mem. op., not designated for publication) (same); *Alcala v. State*, No. 13-18-00327-CR, 2019 WL 2529041, at *4 (Tex. App.—Corpus Christi–Edinburg June 20, 2019, pet. ref'd) (mem. op., not designated for publication) (same); *Rodriguez*, 2015 WL 6395481, at *8 (same).

Additionally, it does not appear that the State emphasized the error at trial. *See Macedo*, 629 S.W.3d at 240. Although the State argued in closing that Ozuna's testimony at trial was corroborated by his 9-1-1 call recording and statements to officers, the State made repeated reference to Watkins's body camera recording and Tate's recorded interview—not Watkins's complained-of testimony. *See id.*; *see also Taylor v. State*, 268 S.W.3d 571, 593 (Tex. Crim. App. 2008) (concluding that although the State argued in closing that the inadmissible hearsay evidence enhanced the complainant's credibility because it showed her story had not changed, such emphasis of the complained-of error did not render the error harmful).

Even without the inadmissible hearsay, there was overwhelming evidence to support the trial court's verdict, including M.A.G.'s testimony at trial. *See Macedo*, 629 S.W.3d at 240; *see also Nino v. State*, No. 13-18-00641-CR, 2020 WL 1887768, at \*2 (Tex. App.—Corpus Christi–Edinburg Apr. 16, 2020, no pet.) (mem. op., not designated for publication) ("If believed, the [complainant's] testimony alone is sufficient to support a guilty verdict."); *Vela v. State*, No. 02-16-00330-CR, 2018 WL 2248562, at \*3 (Tex. App.—Fort Worth May 17, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding the minor complainant's testimony that appellant had followed her in his vehicle, asked her to "get in," tried to reach out of his vehicle to grab her, and then continued to pursue her by "blocking her way" was "sufficient to prove [appellant] committed the offense of attempted kidnapping").

Therefore, we conclude that any error in admitting the objectionable portion of Watkins's testimony would have had but a slight effect if any; thus, the error was harmless. *See* Tex. R. App. P. 44.2(b); *Macedo*, 629 S.W.3d at 240; *Amberson*, 552 S.W.3d at 334.

We overrule Villarreal's sole issue on appeal.

### III. Conclusion

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
Tex. R. App. P. 47.2 (b).

Delivered and filed on the
17th day of February, 2022.

10